## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GIANNI VERSACE, S.P.A.,

        Plaintiff,

    v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

        Defendants.

Case No. 18-cv-07578

## COMPLAINT

Gianni Versace, S.p.A. ("Plaintiff" or "Versace") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.  JURISDICTION AND VENUE

1.  This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Versace's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Versace's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Versace substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Versace to combat online counterfeiters who trade upon Versace's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed imitations of Versace luxury fashion products, including jewellery, handbags, home goods and other products, using counterfeit versions of Versace's federally registered trademarks (the "Counterfeit Versace Products"). The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Versace products, while actually selling Counterfeit Versace Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Versace Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Versace is forced

2

to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Versace Products over the Internet. Versace has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III.   THE PARTIES

**Plaintiffs**

4.     Plaintiff Gianni Versace, S.p.A. is a company organized under the laws of Italy with its principal place of business at Via Manzoni Nr. 38, 20121, Milan, Italy.

5.     Founded by Italian designer Gianni Versace in 1978, Versace is one of the most recognized and influential brands in the world.  Versace designs, manufactures, distributes and sells a wide variety of Italian-made luxury products throughout the world, from haute couture and ready-to-wear clothing, handbags and leather accessories, shoes, sunglasses, jewellery, watches and other fashion accessories, and home goods (collectively, the "Versace Products").  The Versace Products are renowned for their high quality and style and are identified and recognized by the use of the Versace name and trademarks.

6.     Versace has designed for many famous musicians, including Michael Jackson, Elton John, Bruno Mars, and Lady Gaga. Versace designed the stage costumes and album cover costumes for Elton John in 1992.  In 2017, Bruno Mars published "Versace On the Floor" music video featuring the Versace Trademarks.  Versace has also designed clothing for actresses Jennifer Lopez and Naomi Campbell, and royalty, including the Princess of Wales and Princess Caroline of Monaco.

7.       Versace Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Versace Products are instantly recognizable as such.  In the United States and around the world, the Versace brand has come to symbolize high quality, and Versace Products are among the most recognizable in the world.  Versace Products are distributed and sold to consumers throughout the United States through Versace boutiques and luxury-brand retailers, including through authorized retailers in Illinois such as Nordstrom, Bloomingdale's, Saks Fifth Avenue and other high-end department stores, and through the official versace.com website, which was launched in 1997 and began e-commerce sales in 2013.

8.       Versace began using the VERSACE mark in U.S. commerce at least as early as 1994 in connection with handbags, clothing and other goods, and has continuously sold Versace Products under the VERSACE mark since then.  In addition to the VERSACE word mark, Versace has for many years used several distinctive and well-known classical design marks, including a Medusa Head Design and a "Greca" Design, which are set forth in the table below (collectively, the "Versace Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the Versace Trademarks.  Versace's use of the marks has also built substantial goodwill in and to the Versace Trademarks.  The Versace Trademarks are famous marks and valuable assets of Versace.  Versace Products typically include at least one of the registered Versace Trademarks.

9.       Many of the Versace Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,398,385 | VERSACE | For: fireplaces; lamps in class 011. |

4

| | | |
|---|---|---|
| | | For: articles made of precious metals and alloys of precious metals with or without precious stones, namely, rings, necklaces, bracelets, brooches, earrings, tie clips, cufflinks, diamonds, jewel cases, watches, clocks, chronometers, watch cases, costume jewelry, parts and fittings for all the aforesaid goods in class 014.<br><br>For: carpets, bath mats; rugs, mats and matting, and other materials for covering existing floors; non-textile wall hangings in class 027.<br><br>For: advertising; business management; business administration; office functions; dissemination of advertisements; dissemination of advertising matter; industrial business management consultancy and assistance; professional business consultancy; franchising, namely, services provided by a franchisor for third parties in helping, managing and developing commercial enterprises; gathering various goods in the field of fashion and home furnishing and accessories allowing the consumer to view and buy the aforesaid goods in retail stores in class 035. |
| 1,875,093 | <br>"Medusa Head & Greca Design" | For: spectacles and spectacles frames in class 009.<br><br>For: goods of precious metals or coated therewith, namely necklaces, earrings, bracelets, broches, rings, necktie pins, badges of precious metal, medallions, belt buckles of precious metal (for clothing), jewelry, precious gemstones, watches, clocks, chronometers in class 014.<br><br>For: stationery articles, namely notebook paper, letter paper, writing paper, looseleaf paper; paper expanding files, writing and marking instruments, namely fountain pens, roller ballpoint pens, felt tipped pens, roller pens, markers, marking pens, pencil and pencil |

| | | |
|---|---|---|
| | | leads, refills for pens, non-electric erasers in class 016.<br><br>For: kitchen utensils, namely serving spoons, basting spoons, cork screws, and napkin rings not of precious metal; household containers; namely ice buckets, containers for food and soap; beverage glassware; porcelain dishes in general, earthenware, namely mugs, basins, baskets, beverageware, bowls, buckets, cakeservers, candle holders, chamber pots, commemorative plates, cookware, decorative plates, dishes, doorknobs made of porcelain or earthenware, figurines made of china, crystal, earthenware, glass, porcelain, or terracotta, vases in class 021. |
| 2,980,455 | <br><br>"Medusa Head Design" | For: cosmetics, namely night and day creams, cleaning preparations for the care of the face and body, bath-foam, shaving foam, aftershaves, foundation makeup, nail polish, deodorants for men and women, hand and body soaps, hair shampoos and rinses, hair spray, toothpaste and fragrances, namely perfume, toilet water and essential oils for personal use for men and women in class 003.<br><br>For: tableware, namely cutlery; forks, knives and spoons; sterling silver table forks, knives and spoons; domestic fireplace bellows in class 008.<br><br>For: optical instruments, apparatus and equipments, namely eyeglasses; reading glasses, and optical glasses; sunglasses; spectacles; spectacles frames; monocles; lorgnettes in class 009.<br><br>For: apparatus for lighting, namely, electric lighting fixtures for use on ceilings, chandeliers, electric, incandescent, and halogen light bulbs, safety lamps, candle, electric, oil, and portable paper lanterns, standard lamps; fireplaces; decorative water fountains; lamps in class 011. |

For: articles made of precious metals and alloys of precious metals with or without precious stones, namely rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, diamonds, jewelry cases made of precious metal, watches, clocks, chronometers, watch cases, costume jewelry in class 014.

For: leather and imitation of leather sold in bulk, handbags, wallets, luggage, attache cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling, key cases, umbrellas, parasols, walking sticks, whips, harnesses, saddlery; leather key chains in class 018.

For: fireplace surround; floor tiles; wood tile floors; glass tiles; parquet flooring; statuettes of stone, concrete, or marble; non-metal wall panels in class 019.

For: furniture; mirrors, namely looking glasses; picture frames; chairs; cupboards; cushions; desks; divans; plastic and wood doorknobs; figures of bone, ivory, plaster, plastic, wax and wood; plastic and wood furniture handles for doors, plastic key chains; magazine racks; office furniture; pillows; fitted furniture covers in class 020.

For: household or kitchen utensils and containers, namely, dinnerware; beverage-ware; glassware; sugar bowls; beer mugs; bottle openers; bowls; candle holders not of precious metal; china ornaments; cookware, namely non-electric frying pans; corkscrews; soap dispensers; figurines in China, crystal, earthenware, glass, porcelain and terracotta; holders for flowers and plants; perfume atomizers sold empty; plates; pots; soapboxes; soap holders; vases; flower baskets; porcelain and earthenware doorknobs and furniture handles for doors in class 021.

| | | |
|---|---|---|
| | | For: fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen; bed linen; blankets; curtains; unfitted furniture covers; handkerchiefs; kitchen towels; textile wall hangings in class 024.<br><br>For: clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers in class 025.<br><br>For: carpets, rugs, mats and matting, linoleum and other materials for covering existing floors; non-textile wall hangings; non-textile wall decorations in class 027. |
| 3,194,501 | ▨▨▨▨▨▨▨▨▨▨▨<br><br>"Greca Design" | For: bath foam, deodorants for men and women, fragrances, namely perfume, toilet water in class 003.<br><br>For: glasses, sunglasses, spectacles, spectacle frames, and cases in class 009.<br><br>For: articles made of precious metals and alloys of precious metals, with or without precious stones, namely rings, necklaces, bracelets, earrings, tie clips, cuff-links, watches, costume jewellery in class 014.<br><br>For: writing and marking instruments, namely pens in class 016.<br><br>For: leather and imitation leather goods, namely, handbags, wallets, luggage, attaché cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling in class 018.<br><br>For: fabric for textile use, fabric for boots and shoes, bath linen, bed linen; bed blankets; unfitted fabric furniture covers in class 024. |

| | | |
|---|---|---|
| | | For: clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, t-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers in class 025. |
| 3,199,127 | "Greca Circle Design" | For: preparations for the care of the body, bath-foam, body soaps, fragrances, namely, perfume, toilet water in class 003.<br><br>For: optical instruments, apparatus and equipment, namely, glasses, sunglasses, spectacles, spectacle frames, accessories in the nature of eyeglass chains, and parts, fittings, components and cases for all the aforesaid goods in class 009.<br><br>For: articles made of precious metals and alloys of precious metals, with or without precious stones, namely, rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, watches, watch cases, costume jewellery, parts and fittings for all the aforesaid goods in class 014.<br><br>For: stationery articles, namely, paper, letter paper, loose-leaf paper, envelopes, cards, writing instruments, namely, pens, printed matter, namely, periodical magazines, books, and leaflets in the field of fashion, interior design, cosmetics, optical wear and fashion accessories in class 016.<br><br>For: leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, briefcases, sport bags, carry-on bags, shoulder bags, garment bags for traveling, key cases in class 018.<br><br>For: fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen, bed linen; bed blankets; and kitchen towels in class 024. |

| | | |
|---|---|---|
| | | For: lace and embroidery, ribbons in class 026. |
| 3,453,992 | "Greca Element Design" | For: bath foam, after shaves, deodorants for men and women, fragrances, perfume in class 003.<br><br>For: glasses, sunglasses, spectacles in class 009.<br><br>For: leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, key cases in class 018.<br><br>For: furniture; mirrors, namely, looking glasses; cushions; desks; divans; office furniture; pillows; parts and fittings for the aforesaid furniture goods, namely, fitted furniture covers not of paper in class 020.<br><br>For: bath linen; bed linen; bed blankets in class 024.<br><br>For: clothing for men, women and children, namely, belts, coats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, shirts and chemises, T-shirts, underwear, socks and stockings, gloves, ties, scarves, hats and caps, shoes and slippers in class 025.<br><br>For: clothing buttons in class 026. |
| 5,173,618 | "Lion Head Design" | For: cosmetics, including night and day creams; preparations for cleaning the face and body; bath foam; shaving foam after shave; make-up foundations; lip gloss; shoe wax; mascara; cosmetic masks; eyebrow pencils; pencils for cosmetic purposes, nail varnish; deodorants for men and women, hand and body soap, shampoo and hair coloring preparations in the nature of tints; hair lotions and lotions for cosmetic purposes; hair lacquers; dentifrices, fragrances; perfumery, eau de Cologne, lavender water, scented water being perfumery and essential oils for personal use, for men and women; bases for flower perfumes in the nature of essential oils; sun- |

| | | tanning preparations being cosmetics; cosmetic preparations for baths; feminine hygiene cleansing towelettes; feminine deodorant sprays; skincare cosmetics; make-up preparations; cleaning agents for household purposes; shaving preparations; non-medicated toiletries; make-up removing preparations; talcum powder, for toilet use in class 003.

For: optics, namely, spectacles; sunglasses, optical glasses; goggles for sports; optical frames; monocles; theatre glasses; optical goods, namely, glasses and lenses; containers for contact lenses; eyeglasses cases; pince-nez cords; optics, namely, magnifying glasses; correcting optical lenses; optical lenses; lenses for eyeglasses; frames for glasses; electronic schedulers in the nature of electronic agendas; computers, handheld computers; data processing equipment in the nature of a computer mouse; mouse mats; computer keyboards; portable telephones; downloadable ring tones for mobile phones; cell phone straps in class 009.

For: jewelry, precious stones; horological and chronometric instruments; rings being jewelry; cuff links; bracelets being jewelry; watch bands; watch cases; clock cases; watch chains; jewelry chains; pendants; necklaces being jewelry; chronographs for use as timepieces; timepieces; stopwatches; chronoscopes; diamonds; tie pins; figurines in the nature of statuettes of precious metal; gold thread jewelry; wire of precious metal, namely, precious metal jewelry chains; silver thread jewelry; cloisonné jewelry; badges of precious metal; clock hands for clock- and watchmaking; alloys of precious metal; ingots of precious metals; movements for clocks and watches; medals; lockets being jewelry; earrings; jewelry of yellow amber, ivory jewelry; jewelry ornaments; ornaments of jet; shoe ornaments of precious metal; hat ornaments of precious metal; pendulum clocks; atomic clocks; wristwatches; pocket watches; |
|---|---|---|

| | | | |
|---|---|---|---|
| | | | master clocks; electric clocks and watches; jewelry stones; trinkets or fobs, namely, key rings of precious metal; dials for clock and watch making; boxes of precious metal; cases for clock- and watchmaking; jewelry cases, namely, jewelry caskets and boxes; presentation cases for watches, namely, cases adapted for holding watches; pins being jewelry; ornamental pins; jewelry brooches; statuettes of precious metal; paste jewelry being costume jewelry; time instruments, namely, watches, clocks; alarm clocks; watch crystals in class 014.

For: leather and imitations of leather; animal skins, hides; women's handbags; pocket wallets; luggage; garment carriers in the nature of garment bags for travel; rucksacks; document cases; sports bags; trunks being luggage; travelling trunks; carry-on bags; sling bags; clothing bags in the nature of garment bags for travel; valises; suitcases; attaché cases; purses; travelling handbags; notecases, namely, business card cases; key cases; umbrellas; parasols; beach parasols; walking sticks; alpenstocks; whips; harness for horses; saddlery in class 018.

For: clothing, namely shirts, pants, jeans, sweaters, skirts, dresses; footwear; headgear, namely, headwear; clothing of imitations of leather, namely, pants, jackets; clothing of leather, namely, pants, jackets; motorists' clothing, namely, motorists' jackets, driving gloves; cyclists' clothing, namely, biking shorts, athletic shirts, cycling gloves; clothing for gymnastics, namely, leotards, leggings; gowns; bath robes; bandanas being scarves; berets; underclothing; smocks, boas being necklets; teddies being undergarments; garters; sports shoes; stockings; slippers; socks; jodhpurs; short-sleeve shirts; stuff jackets being clothing; top hats; coats; hoods being clothing; belts for clothing; money belts being clothing; tights; collars being clothing; detachable collars; suits; beachwear; ties; |

|  |  | ascots; headbands for clothing; pocket squares; dress handkerchiefs in the nature of pocket squares; jackets being clothing; jumper dresses; girdles; gloves being clothing; arm length gloves; mackintoshes; knitwear, namely knit shirts, knit skirts, knit dresses, knit sweaters, knit jackets; jersey clothing, namely, shirts, pants, dresses; leg warmers; leggings being trousers; liveries; sports jerseys; hosiery; swimsuits; pullovers; muffs being clothing; maniples; pelerines; mantillas; sleep masks; miniskirts; cowls being clothing; boxer shorts; bathing drawers; vests, trousers; parkas; pelisses; furs, namely, fur cloaks, fur coats; shirt yokes; pajamas; wristbands being clothing; ponchos; sock suspenders; brassieres; sandals; bath sandals; shoes; bath slippers; gymnastic shoes; beach shoes; shawls; sashes for wear, underpants; wimples; topcoats; outerclothing, namely, jackets, coats, vests; petticoats; slips being undergarments; shirt fronts; ankle boots; boots; fur stoles; T-shirts; combinations being clothing; uniforms; veils being clothing; visors being headwear; wooden shoes in class 025.<br><br>For: lace and embroidery, ribbons and braids; buckles for clothing; shoe fasteners; blouse fasteners, namely, snaps and buttons for blouses; shoe buckles; frills for attachment to clothing; lace for edgings for clothing; hook and eye fastening tape; clothing hooks; hooks for corsets; shoe hooks; tinsels as trimmings for clothing; buttons; stud buttons for duvets; stud buttons for shoes; collar studs, namely collar stays; snap fasteners; pins, namely bonnet pins, hair pins, hat pins and needles; borders and edgings for clothing; hem tape for clothing in class 026.<br><br>For: advertising services; business management; business administration services; providing office functions; dissemination of advertisements; dissemination of advertising matter; rental of advertising space; commercial and industrial business management assistance |
|---|---|---|

| | | |
|---|---|---|
| | | and consultancy; professional business consulting; modelling for advertising or sales promotion; franchising, namely, services rendered by a franchisor, that is transfer of business and organizational consultancy assistance in the development and management of a commercial enterprise; provision of information concerning commercial sales of fashion goods; retail store services and on-line retail store services for others featuring cosmetics, spectacles, mobile telephones, jewelry, clocks and watches, bags, accessories of leather, clothing, footwear, haberdashery articles; presentation of goods on communications media, namely, providing television home shopping services in the field of general consumer merchandise; electronic commerce services, namely, providing information about products via telecommunication networks for advertising and sales purposes; online retail store services featuring cosmetics, spectacles, mobile telephones, jewelry, clocks and watches, bags, accessories of leather, clothing, footwear, haberdashery articles; retail store services and wholesale store services featuring cosmetics, spectacles, mobile telephones, jewelry, clocks and watches, bags, accessories of leather, clothing, footwear, haberdashery articles in class 035. |
| 5,253,199 | <br><br>"Lion Head Design" | For: jewellery, precious stones; horological and chronometric instruments; jewelry, namely, rings; cuff links; jewelry, namely, bracelets; watch bands; watch cases being parts of watches; clock cases being parts of clocks; watch chains; jewelry chains; pendants; jewelry, namely, necklaces; chronographs as watches; timepieces; stopwatches; chronoscopes; diamonds; tie pins; figurines, namely, statuettes of precious metal; gold thread jewelry; jewelry, namely, wire in the nature of threads of precious metal; jewelry, namely, silver thread; jewellery; jewelry, namely, cloisonné jewellery; badges of precious metal; clock- and watchmaking items, |

| | | namely, clock hands; alloys of precious metal; ingots of precious metals; movements for clocks and watches; medals; jewelry, namely, lockets; earrings; jewellery of yellow amber; ivory jewelry; jewelry, namely, ornaments; ornaments of jet; shoe ornaments of precious metal; hat ornaments of precious metal; pendulum clocks; atomic clocks; wristwatches; pocket watches; master clocks; electric clocks and watches; jewellery stones; key rings in the nature of trinkets and fobs of precious metal; dials for clock-and-watch-making; boxes of precious metal; cases for clock- and watchmaking, namely, cases being parts of watches and clocks; jewelry cases in the nature of caskets or boxes; presentation cases for watches being parts of watches; pins being jewelry; ornamental pins; jewelry, namely, brooches; statuettes of precious metal; costume jewelry, namely, paste jewelry; time instruments, namely, watches, clocks; alarm clocks; watch crystals in class 014.<br><br>For: leather and imitations of leather; animal skins and hides; women's handbags; pocket wallets; luggage; garment carriers, namely, garment bags for travel; rucksacks; document cases; sports bags; luggage, namely, trunks; travelling trunks; carry-on bags; sling bags; garment bags for travel; valises; suitcases; attaché cases; purses; travelling handbags; business card cases; key cases, umbrellas; parasols; beach parasols; walking sticks; alpenstocks; whips; harness for horses; saddlery in class 018.<br><br>For: clothing, namely, shirts, pants, jeans, sweaters, dresses; footwear; headgear, namely, headwear, hats, caps; clothing of imitations of leather, namely, pants, jackets; clothing of leather, namely, pants, jackets; motorists' clothing, namely, motorists' jackets; cyclists' clothing, namely, biking shorts, athletic shirts, bicycling gloves; clothing for gymnastics, namely, leotards, leggings, gymnastic shoes; gowns; bath robes; scarves, namely, bandanas; |
| | | |

berets; underclothing; smocks; necklets, namely, boas; undergarments, namely, teddies; garters; sports shoes; stockings; slippers; socks; jodhpurs; short-sleeve shirts; shirts; clothing, namely, stuff jackets; top hats; coats; clothing, namely, hoods; belts for clothing; clothing, namely, money belts; tights; clothing, namely, collars; detachable collars; suits; beachwear; ties; ascots; headbands for clothing; pocket squares; dress handkerchiefs, namely, pocket squares; clothing, namely, jackets; skirts; jumper dresses; girdles; clothing, namely, gloves; arm length gloves; mackintoshes in the nature of raincoats; knitwear, namely, knit shirts, knit skirts, knit dresses, knit sweaters, knit jackets; clothing, namely, jerseys; leg warmers; trousers, namely, leggings; liveries; sports jerseys; hosiery; swimsuits; pullovers; clothing, namely, muffs; maniples; pelerines; mantillas; sleep masks; miniskirts; clothing, namely, cowls; boxer shorts; bathing drawers; vests; trousers; parkas; pelisses; fur clothing, namely, fur jackets, fur coats, fur cloaks; shirt yokes; pyjamas; clothing, namely, wristbands; ponchos; sock suspenders; brassieres; sandals; bath sandals; shoes; bath slippers; gymnastic shoes; beach shoes; shawls; sashes for wear; underpants; wimples; topcoats; outerclothing, namely, jackets, coats, vests; petticoats; undergarments, namely, slips; shirt fronts; ankle boots; boots; fur stoles; T-shirts; clothing, namely, combinations; uniforms; clothing, namely, veils; headwear, namely, visors; wooden shoes in class 025.

For: lace and embroidery, ribbons and braids; clothing accessories, namely, clothing buckles; shoe fasteners; blouse fasteners; shoe buckles; frills for attachment to clothing; lace for edgings; hook and eyes; haberdashery, namely, clothing hooks; hooks for corsets; shoe hooks; tinsels in the nature of lace as trimmings for clothing; buttons; press buttons for duvets; press buttons for shoes; snap fasteners; pins, namely, bonnet pins, hair pins, hat pins and

| | | |
|---|---|---|
| | | needles; borders and edgings for clothing; items for hems on clothing, namely, hem tape in class 026. |
| 4,476,530 | | For: lace and embroidery, ribbons and braid, buttons, hooks and eyes, pins namely, hair pins, curling pins, safety pins and needles, buckles, namely, belt buckles and hair buckles in class 026.<br><br>For: clothing for men, women and children, namely, belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers in class 025.<br><br>For: leather and imitation of leather, handbags, wallets, luggage attaché cases, tote bags, briefcases, sport bags, travelling trunks, carry-on bags, shoulder bags, garment bags for travelling, key cases, umbrellas, parasols, walking sticks, whips, harnesses, bridles and saddlery in class 018.<br><br>For: articles made of precious metals and alloys of precious metals with or without precious stones, namely, rings, necklaces, bracelets, brooches, earrings, tie clips, cufflinks, jewel cases, watches, docks chronometers, watch cases, costume jewellery, diamonds, and parts and fittings for all the aforesaid goods in class 014. |

10.     The above U.S. registrations for the Versace Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Versace Trademarks constitute *prima facie* evidence of their validity and of Versace's exclusive right to use the Versace Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct

copies of the United States Registration Certificates for the above-listed Versace Trademarks are attached hereto as **Exhibit 1**.

11.     The Versace Trademarks are distinctive when applied to the Versace Products, signifying to the purchaser that the products come from Versace and are manufactured to Versace's quality standards.  Whether Versace manufactures the products itself or contracts with others to do so, Versace has ensured that products bearing the Versace Trademarks are manufactured to the highest quality standards.

12.     The Versace Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Versace Products have enabled the Versace brand to achieve widespread recognition and fame and have made the Versace Trademarks some of the most well-known marks in the fashion world.  The widespread fame, outstanding reputation, and significant goodwill associated with the Versace brand have made the Versace Trademarks valuable assets of Versace.

13.     Versace has expended substantial time, money, and other resources in advertising and promoting the Versace Trademarks.  In fact, Versace has expended millions of dollars annually in advertising, promoting and marketing featuring the Versace Trademarks.  Versace Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the Versace Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Versace.  Versace Products have become among the most popular of their kind in the U.S. and the world.  The Versace Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the Versace Trademarks is of incalculable and inestimable value to Versace.

14.     Genuine Versace Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Versace brand.

15.     Since at least as early as 2013, genuine Versace Products have been promoted and sold at the official versace.com website.  Sales of Versace Products via the versace.com website are significant.   The versace.com website features proprietary content, images and designs exclusive to the Versace brand.

**The Defendants**

16.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Versace Products to consumers within the United States, including the State of Illinois.

17.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the Versace Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Versace to learn Defendants' true identities and the exact interworking of their counterfeit network.   In the event that Defendants provide additional credible information regarding their identities, Versace will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of the Versace brand has resulted in its significant counterfeiting. Consequently, Versace has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Versace has identified hundreds of domain names linked to fully interactive websites and online marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Versace Products to consumers in this Judicial District and throughout the United States.  Despite Versace's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

19.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and PayPal.  The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.  Many Defendants further perpetuate the illusion

20

of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Versace has not licensed or authorized Defendants to use any of the Versace Trademarks, and none of the Defendants are authorized retailers of genuine Versace Products.

20. Many Defendants also deceive unknowing consumers by using the Versace Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Versace Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Versace Products. Other Defendants only show the Versace Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Versace Products.

21. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their

identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit Versace Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Versace Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Versace's official versace.com website.

23.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

24.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Versace's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

25.     Defendants, without any authorization or license from Versace, have knowingly and willfully used and continue to use the Versace Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Versace Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Versace Products into the United States, including Illinois.

26.     Defendants' use of the Versace Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Versace Products, including the sale of Counterfeit Versace Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Versace.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27.     Versace hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

28.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Versace Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Versace Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Versace Products offered, sold or marketed under the Versace Trademarks.

29.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Versace Trademarks without Versace's permission.

30.     Versace is the exclusive owner of the Versace Trademarks.  Versace's United States Registrations for the Versace Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Versace's rights in the Versace Trademarks, and are willfully infringing and intentionally using counterfeits of the Versace Trademarks.  Defendants' willful, intentional and unauthorized use of the Versace Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Versace Products among the general public.

31.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32.     Versace has no adequate remedy at law, and if Defendants' actions are not enjoined, Versace will continue to suffer irreparable harm to its reputation and the goodwill of the Versace Trademarks.

33.    The injuries and damages sustained by Versace has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Versace Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34.    Versace hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35.    Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Versace Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Versace or the origin, sponsorship, or approval of Defendants' Counterfeit Versace Products by Versace.

36.    By using the Versace Trademarks in connection with the sale of Counterfeit Versace Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Versace Products.

37.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Versace Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38.    Versace has no adequate remedy at law and, if Defendants' actions are not enjoined, Versace will continue to suffer irreparable harm to its reputation and the goodwill of the Versace brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

39.    Versace hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 38.

40.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Versace Products as those of Versace, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Versace Products, representing that their products have Versace's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

41.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

42.     Versace has no adequate remedy at law, and Defendants' conduct has caused Versace to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Versace will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Versace prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the Versace Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Versace Product or is not authorized by Versace to be sold in connection with the Versace Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Versace Product or any other product produced by Versace, that is not Versace's or not produced under the authorization, control, or supervision of Versace and approved by Versace for sale under the Versace Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Versace Products are those sold under the authorization, control or supervision of Versace, or are sponsored by, approved by, or otherwise connected with Versace;

d. further infringing the Versace Trademarks and damaging Versace's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Versace, nor authorized by Versace to be sold or offered for sale, and which bear any of Versace's trademarks, including the Versace Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Versace's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Versace, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Versace's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Versace's

27

selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Versace's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Versace Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Versace Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Versace all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Versace Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Versace be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Versace Trademarks;

6) That Versace be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of November 2018.     Respectfully submitted,


/s/ Justin R. Gaudio
Paul G. Juettner
Justin R. Gaudio
Mary F. Fetsco
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
pjuettner@gbc.law
jgaudio@gbc.law
mfetsco@gbc.law

*Counsel for Plaintiff Gianni Versace, S.p.A.*

29